No. 15,239.

LARIMER, TRUSTEE ET AL. *v.* SALIDA GRANITE CORPORATION.

(153 P. [2d] 998)

Decided October 30, 1944.

Messrs. HINDRY, FRIEDMAN & BREWSTER, Mr. THOMAS W. NEVENS, for plaintiffs in error.

Mr. JOHN M. BOYLE, Mr. CHARLES F. MORRIS, for defendant in error.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

These parties appear here in the same order as in the trial court. Plaintiff in error Larimer is hereinafter referred to as the trustee, he and his associates collectively as the plaintiffs, and defendant in error, The Salida Granite Corporation, as the granite company. The trustee brought this action to foreclose a deed of trust securing certain bonds on which in July, 1933, there had been default on interest, and in July, 1935 on principal. Trial was to the court and judgment for the granite company. To review that judgment plaintiffs prosecute this writ.

The complaint alleged the execution of the trust deed to secure $50,000 in seven per cent bonds of which $38,500 were issued, that of these $25,000 were held by plaintiffs, the default; and prayed judgment for $59,940, foreclosure, appointment of a receiver, $750 attorney's fees, and costs. Attached thereto was a copy of an alleged notice to the trustee stating that the signers were owners of more than twenty-five per cent of said bonds, that default had been made in payment, that the signers had elected to declare default, and demanded foreclosure. The answer pleaded a "refinancing agreement" and contained four defenses. Of these we confine ourselves principally to the third which was that, the refinancing agreement (undisputed) considered, plaintiffs were estopped.

The refinancing agreement was entered into January 7, 1939, between the granite company and certain of its bondholders and holders of its notes for borrowed money. Briefly it recites financial difficulties due to business depression and burdensome laws, regulations and taxes, and the desire of all the parties to continue operations and avoid foreclosure and resulting loss. To that end it provides for an increase of $50,000 in the capital stock to be evidenced by preferred shares to draw three per cent interest; whereupon the noteholders and bondholders are to deposit their notes and bonds

in escrow to be exchanged for such stock at par. Any bond or noteholder may become a party by signing and delivering his paper to the escrow holder. The bonds were issued July 1, 1925, and matured July 1, 1935. The refinancing agreement was dated July 7, 1939. The demand for foreclosure was dated June 3, 1941. This suit was begun June 16, following, the answer was filed November 4, 1941, and the cause was tried February 20, 1942.

It thus appears that for more than four years after default the bondholders did not move. They then entered into a contract admittedly for the best interests of themselves, the granite company and its creditors. Thereafter they delayed for two additional years before bringing this suit. They complain of the directors for failure to act, within a reasonable time, to issue and deposit the preferred stock. Yet ·at the time of the trial all their bonds and all the preferred shares·to cover the exchange were in the hands of the escrow holder.

Under the terms of the trust deed this suit could only be prosecuted by the trustee on his own motion to protect the bondholders or· on demand of the holders of twenty-five per cent of the bonds. It purports to be based upon such demand, notice whereof was essential. It is alleged and denied that the notice attached to the complaint was given but there is no evidence to support it.

The refinancing agreement reads in part: "In the event that all of said promissory notes and more than seventy-five (75%) per cent in face value of all outstanding bonds are not deposited for exchange within twelve months from the date hereof, then it shall be optional with any of the second parties to demand a return of their said bonds or notes so deposited, otherwise this agreement to be and remain in full force and effect." Some of the plaintiffs demanded a return of their bonds, but did not get them. Other bondholders, originally plaintiffs, withdrew. Twenty-five per cent in

par value of the bondholders are hence no longer plaintiffs. Since the foregoing is the only provision of the refinancing agreement permitting a withdrawal of deposited bonds, it supports the conclusion that otherwise there could be no withdrawal. This, however, rests on the assumption that the directors acted within a reasonable time, since seventy-five per cent, face value, of the outstanding bonds were deposited within the time so limited.

Plaintiffs say the sole question is, Was the refinancing contract valid, and we proceed upon that assumption. They attack it for three reasons: 1. It was ultra vires. 2. It was a mere offer by the bondholders. 3. The directors did not act within a reasonable time.

■ 1. This objection is fully answered by a voting trust agreement executed October 7, 1929. It covers some eighteen typewritten pages. It is not abstracted, but we have examined it carefully. It delegates almost every conceivable power which would otherwise be vested in the stockholders. It provides, inter alia:

"The voting trustees are specifically authorized, in the exercise of their unrestricted discretion, in respect of any and all stock of the company subject to this agreement, to vote for or consent to any increase of the capital stock of the company that lawfully may be submitted for action by the stockholders of the company * * *.

"This agreement can be modified at any time by the written consent of all of the voting trustees, except that the term of this agreement [October 7, 1944] can not be extended."

Since at the time the refinancing contract was executed the directors had the power to authorize themselves to execute it, they then had, for all practical purposes, the power to execute.

■ 2. Under the facts appearing, the promise of the bondholders was a good consideration for the promise of the directors and vice versa. But, say the plaintiffs, the

directors promised nothing. We do not so read the contract. We find it impossible to escape the conclusion that if a sufficient number of the bond and noteholders made the specified deposits, the directors were, by necessary implication, obliged to redeem in preferred stock.

■ 3. What is a reasonable time for the performance of a contract depends upon the particular facts and circumstances of each case and rests largely in the discretion of the trial court. 17 C.J.S., p. 1067, §503f.; *Geiger v. Kiser,* 47 Colo. 297, 301, 107 Pac. 267; *McWilliams v. Garstin,* 70 Colo. 59, 197 Pac. 246. Considering the importance to the consummation of the refinancing plan that approximately all of the outstanding bonds should be deposited, and the fact, as disclosed by the record, that the directors, despite reasonable diligence, were unable to secure the deposit of $4,500 of those bonds held by the county commissioners of Chaffee county until June 20, 1941, we are forced to the conclusion, reached by the trial court, that the directors acted within a reasonable time. At the time of the trial the preferred stock had been issued and deposited and ninety-seven per cent par value of all the bonds were in the hands of the escrow holder. No action against the directors either for specific performance or cancellation of the refinancing agreement had been brought. The court found generally for the granite company and specifically that it had performed within a reasonable time. We think the record supports that finding and that plaintiffs were estopped.

The judgment is accordingly affirmed.

MR. JUSTICE BAKKE and MR. JUSTICE HILLIARD concur.